IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-2705-NYW

STANLEY FOOTE,

    Applicant,

v.

T.K. RHODES-COZZA, USP Florence,

    Respondent.

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

    This matter comes before the court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Application") [# 1], filed *pro se* on December 14, 2015, by Applicant, Stanley Foote. On April 22, 2016, Respondent filed a Response to the Application (the "Response") [#19]. On May 27, 2016, Mr. Foote filed a Reply (the "Reply") [#23]. On October 14, 2016, Mr. Foote filed a "Motion Requesting Permission or Leave of the court to Supplement Pleadings of 28 U.S.C.S. 2241 and Said Supplements in the Interest of Judicial Economics, Pro Se" (the "Motion to Supplement") [#25], which was stricken without prejudice by the court on November 3, 2016 [#27]. On December 22, 2016, Mr. Foote filed a "Motion to Reconsider Facts, Take Judicial Notice of Exhibits from Document #25, and Request for Appointment of Counsel" (the "Motion to Reconsider") [#29]. On January 3, 2017, the court granted the motion to reconsider in part and denied it in part. [#30]. Mr. Foote's request that the court reconsider its Minute Order [#27] and his request for appointment of counsel were denied. However, to the extent Mr. Foote was seeking to amend his habeas application, the court granted the request and directed Mr. Foote to file an amended habeas corpus application no later than

February 1, 2017. Applicant failed to file an amended habeas application within the time allowed.

On February 12, 2017, the court issued a Minute Order directing the Respondent to file exhibits, which were referenced in its Response in a Declaration from Mark Renda [#19-1], but were not attached. [#35]. In addition, the court stated that because there was additional time permitted to Respondent, the court would consider Applicant's supplement information provided in [#25] and Respondent could file a response to the supplement information by March 6, 2017. On March 6, 2017, Respondent filed a "Response [to the court's Minute Order]," (the "Response to Motion to Supplement") [#36], which included a response to Applicant's supplement information. Respondent also attached the missing exhibits. ("Respondent's Exhibits"), [#36-2, #36-3].

After reviewing the pertinent portions of the record in this case, including the Application, the Response, the Reply, the Motion to Supplement, the Response to Motion to Supplement, and the Respondent's Exhibits, the court respectfully concludes that the Application should be denied.

**RELEVANT FACTUAL AND PROCEDURAL HISTORY**

Mr. Foote is a federal prisoner, currently in the custody of the United States Bureau of Prisons ("BOP") at the McCreary United States Penitentiary in Pine Knot, Kentucky. While he was incarcerated at the United States Penitentiary in Florence, Colorado, Mr. Foote filed this action challenging the validity of a prison disciplinary conviction he incurred while he was incarcerated at the United States Penitentiary in Canaan, Pennsylvania ("USP Canaan"). Specifically, on April 22, 2014, Applicant received an incident report for "attempted introduction of drugs" (Code 111A) and "use of a telephone to further criminal activity" (Code 197). *See* [#

36-3 at 1]. On April 23, 2014, Applicant was issued a copy of Incident Report No 2574624. [*Id.*] On April 25, 2014, Applicant was provided a copy of the Notice of Discipline Hearing before the DHO and a written notice of his rights before the DHO. [*Id.* at 113-17]. The Unit Disciplinary Committee provided Applicant the opportunity to make a statement and he stated, "Nobody spoke my name in any of these phone conversations." [*Id.* at 113]. Applicant requested staff representation but declined to have witnesses. [*Id.* at 114]. On May 2, 2014, Discipline Hearing Officer Mark Renda ("DHO Renda") conducted a DHO hearing in regard to the above incident report. [*Id.* at 1]. Applicant's staff representative reviewed all available documentation regarding the incident and listened to the phone call. [*Id.*]. She also met with Applicant prior to the DHO hearing. [*Id.*]. She noted no discrepancies in the discipline process. [*Id.*]. At the DHO hearing, Applicant made the following statement: "I'm trying to figure out how I got caught up in this. Nobody mentioned my name. Some of the stuff wasn't said. They switched the words around. Nothing I said was pointing to introduction." [*Id.* at 2]. Applicant provided no documentary evidence. [*Id.*]. The DHO found that Mr. Foote committed the prohibited acts based on numerous transcribed telephone calls and email message reports for Mr. Foote as well as his alleged co-conspirators. [*Id.* at 68].

Specifically, the DHO report states that it relied on the account of the reporting staff member, who provided information regarding numerous telephone calls by several inmates, which used coded/veiled language to discuss introducing drugs into the prison. [#36-2 at 4]. The following is some information that was provided specifically about Mr. Foote:

> On November 18, 2013, at 5:10 p.m., inmate Foote placed a telephone call to 551-497-2209, and spoke to Beyah. During the call, Beyah used coded/veiled language to tell inmate Foote about his plan with inmate Edwards to introduce heroin during social visits with Shavon Thomas. Beyah indicated that Shavon Thomas would pick up him [sic] so he could supply her with heroin. Beyah

3

then indicated he would be sending drugs for him, inmate Johnson, and inmate Hargrove and that he was fronting the money for the heroin in return for inmate Edwards paying him $1000.00 after the drugs were sold. Beyah then asked inmate Foote to tell inmates Johnson and Hargrove to call him so he can let them know about the heroin he is sending for them via inmate Edwards. Inmate Foote indicated that he would tell them to call him. The pertinent parts of the call are transcribed below.

BEYAH        But you, uh this week and shit, uh, my man's girl (Shavon Thomas) and shit supposed to be coming through and shit, you know what I'm saying.
FOOTE        Yeah.
BEYAH        So you know what I mean, like I don't know man. She's supposed to be coming through and shit to put up some books for him and shit. Know what I'm saying, I told them ya'll read them and shit. You feel me?
FOOTE        Yeah.
BEYAH:       Tyson (inmate Edwards) girl and shit supposed to be coming through, I don't know this week, he said to pick up them books and shit, if anything just holler at him and shit. You know what I'm saying, just call me back Friday and shit I'll let you know, you know what I'm saying whatever, whatever, you feel me?
FOOTE:       Who's girl you said?
BEYAH:       Tyson.
FOOTE:       Alright, yeah.
BEYAH:       Yeah, she supposed to be come get me so I can go down there get some books (heroin) and shit like that and shit.
FOOTE:       yeah.
BEYAH:       I told him that to holler at, I told him to make sure that you, uh, you, Tank, and uh, uh, uh, uh, uh Sheed get to read them and shit. You hear me?
FOOTE:       Yeah.
BEYAH:       She's supposed to coming through and whatever and shit like I'm a go ahead and kick out like that and he, you know what I mean?
FOOTE:       Yeah.
BEYAH:       But let Tank and them niggas know, like I'm just, word is bond that nigga gonna give me a dollar Murda. You hear me my nigga?
FOOTE:       Yeah.
BEYAH:       Word is bond to Allah, nigga gonna give me a dollar my nigga.

4

| | |
|---|---|
| FOOTE: | That's crazy man. |
| BEYAH: | A dollar, you hear man? |
| FOOTE: | Yeah |
| BEYAH: | A dollar dog. |
| . . . | |
| BEYAH: | But uh, yeah man. I'm just give me about another week, you hear me Murda? |
| FOOTE: | Yeah. |
| BEYAH: | If she comes down and goes barging over with me, though those books will be coming this weekend though, or not this weekend, you know next week sometime though. You heard me. |
| FOOTE: | Where she coming from the city? |
| BEYAH: | No, ATL (Atlanta, Georgia) |
| FOOTE: | Oh alright. |
| BEYAH: | You heard? |
| FOOTE: | Yeah. |
| BEYAH: | So tell Sheed and Tank, and shit that the books probably be, just make sure ya'll call me Friday, so I can just let ya'll know. |
| FOOTE: | Yeah, I got you. |

[Doc. # 36-2 at 43-45].

Following the DHO hearing, the DHO concluded that there was sufficient evidence to support the charges. [*Id.* at 68]. For his Code 111A violation, Mr. Foote was sanctioned with the loss of forty days of good conduct time, 90 days disciplinary segregation, three months Impound Property (excluding religious and legal material), two years loss of commissary (suspended pending 180 days clear conduct), two years loss of email, three years loss of telephone privileges, three years loss of visiting privileges followed by three years non-contact and immediate family only visiting. [*Id.* at 69]. For his Code 197 violation, Mr. Foote was sanctioned with 40 days loss of good conduct time, 200 days forfeiture of non-vested good conduct time, two years loss of email (to be served concurrent to code 111A), three years loss of telephone privileges (to be served concurrent to code 111A), three years loss of visiting privileges followed by three years non-contact and immediate family only visiting (to be served concurrent to code 111A). [*Id.*].

On May 19, 2014, Applicant was provided with a copy of the DHO's written findings and conclusions. [*Id.* at 70]. Mr. Foote appealed the Incident Report. According to Mr. Foote, on July 3, 2014, Regional Director J.L. Norwood remanded the incident report for further action, stating, "your appeal revealed questions concerning the disciplinary hearing record and process." [#1 at 4]. Mr. Foote argues that the warden informed him that the incident report would be "reheard" by DHO. [*Id.* at 3].

On December 14, 2015, Mr. Foote filed the instant habeas action asserting one claim of violation of his due process rights. [#1]. According to Applicant, as of the date he filed his habeas application, no further action had been taken on his case and his privileges had not been restored. For relief, he seeks expungement of his disciplinary conviction and restoration of his good-time credit. [*Id.* at 6].

Subsequent to the filing of the habeas action, DHO Renda stated that the North Central Regional Office conducted an audit of the discipline packet. During the review of Incident Report No. 2574624, it determined that charging and sanctioning Applicant with both disciplinary code violations was considered stacking the charges because the same evidence was used to support both codes. [#19-1 at 5]. Therefore, on January 21, 2016, an amended DHO report was issued. [#36-1 at 68]. The Code 197 violation (Use of the Telephone to Further Criminal Activity) was removed, along with the associated sanctions. [*Id.*]. Applicant was issued a copy of the amended DHO report on January 26, 2016. [*Id.* at 70].

On October 14, 2016, Applicant filed a Motion to Supplement, arguing that he was entitled to a rehearing in U.S.P. Florence on the original incident report, that the DHO improperly amended its report and that there was "no evidence whatsoever" of a Code 111 violation in the original hearing. [#25-2 at 7]. In the Motion to Supplement, Mr. Foote also states that he has now exhausted all administrative remedies for a second time. [*Id.* at 3].

## STANDARD OF REVIEW

The court must construe Mr. Foote's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Hall v. Bellmon*, 935

F.2d 1106, 1110 (10th Cir. 1991). However, the court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is warranted only if Mr. Foote "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## ANALYSIS

The Fifth Amendment protects federal prisoners against the deprivation of liberty or property without due process of law. To plead a due process claim sufficiently, Mr. Foote must allege facts showing: 1) that he was deprived of a liberty or property interest and 2) that the procedures required prior to such a deprivation were not properly observed. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("those who seek to invoke [the due process clause's] procedural protection must establish that one of these interests is at stake").

In *Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974), the Supreme Court held that prisoners have a liberty interest in receiving good time credits that cannot be deprived in a prison disciplinary proceeding without procedural due process protections. Notwithstanding, the Court held that prison disciplinary proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. If a protected liberty interest is implicated, procedural due process requires that a prison inmate facing disciplinary charges be provided: 1) the right to appear before an impartial decision-making body, 2) twenty-four hour advance written notice of the charges, 3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional security or correctional goals, 4) assistance from an inmate representative, if the charged inmate is illiterate or if the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case,

and 5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id*. at 563-71. In addition, procedural due process requires that "the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (internal citation and quotation marks omitted).

In the instant case, the court finds that Applicant was afforded each of the due process protections required by *Wolff* in connection with the disciplinary proceeding at issue in this action. Specifically, he received the opportunity to appear before a DHO, he was provided with written notice of the charges against him, and a copy of his rights and notice of the disciplinary hearing were delivered to him more than twenty-four hours before his hearing. Also, he was provided the opportunity to call witnesses and afforded the right to staff representation. Finally, the BOP provided Applicant with the DHO's report, and then the amended DHO's report, which provided a thorough written explanation of the DHO's decision, as well as the evidence relied upon and the rationale for the decision.

Although Mr. Foote argues that he was entitled to a "rehearing" following his appeal, *see* [#23 at 3], the response from the Regional Director, dated July 3, 2014, specifically stated: "A review of your appeal revealed questions concerning the disciplinary hearing record and process. Accordingly, this disciplinary action is being remanded for *further action*." [# 1 at 9 (emphasis added)]. There is no due process requirement that an inmate receive a rehearing, particularly as to a DHO Report that has been substantively amended. Following the Regional Director's response, an Amended DHO Report was issued and the Code 197 violation was removed, as well as the associated sanctions. The Code 111A violation was upheld as initially adjudicated with no new evidence being considered. [#19-1 at 5]. As such, Mr. Foote has not demonstrated that his constitutional due process rights were violated.

Moreover, contrary to Applicant's assertions, the DHO's decision that he violated Code 111, is supported by some evidence. The determination of whether that standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any

evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Under *Hill*, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Id*. at 457. The court cannot conduct a *de novo* review of the evidence and re-try the disciplinary case.

In this case, Mr. Foote offers nothing to show that the disciplinary case against him was arbitrary. The fact that the DHO believed the testimony of the prison staff member rather than Mr. Foote's statements does not show a violation of due process; even if the DHO erred, in the context of prison disciplinary proceedings, the Constitution requires due process, not error-free decision-making. *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983). The DHO Report thoroughly includes information from the Incident Report and cites transcribed telephone calls that involved Mr. Foote as well as other inmates. [#36-2].

It is apparent upon review of the record that the DHO's decision was based on "the greater weight of the evidence," and that the DHO properly documented his findings and specific evidence relied on in reaching those findings as required by 28 C.F.R. § 541.17(g). Thus, Mr. Foote received all the due process protections required for the deprivation of a protected liberty interest. Therefore, he is not entitled to relief.

## CONCLUSION

For the reasons set forth herein, the court respectfully concludes that Mr. Foote is not entitled to any relief and the Application will be denied. Accordingly, IT IS **ORDERED** that:

(1) The Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [# 1] is **DENIED;** and

(2) This case is **DISMISSED WITH PREJUDICE**.

DATED: May 17, 2017                    BY THE COURT:

                                       s/ Nina Y. Wang
                                       Nina Y. Wang
                                       United States Magistrate Judge